Good morning, counsel. Good morning, and may it please the Court, Trip Johnston on behalf of Mr. Ray. I'd like to start by noting the foundation and basis for Congress's enactment of the sex trafficking statute that's now codified in 1591. Congress made over 24 findings that focused mostly on transnational, international trafficking of the sort that is epitomized by this Court's decision in Bachman, a case where a young woman was tricked into traveling to Saipan, had her travel documents taken from her, was forced into a brothel, and forced to engage in involuntary sex. Congress did not limit 1591 to that sort of jurisdictional nexus of transnational engagements or international crimes. It is now applied routinely in the Southern District, the Central District, other districts, to a wide variety of cases that involve prostitution and pandering. But one thing that Congress did find, and one thing that it did enact in 1591's elements, is a particular finding that trafficking includes, quote, of the crime of forcible rape when it involves the involuntary participation of another person in sex acts by means of fraud, force, or coercion. In that sense, Congress was very specific about the limitations of what would ultimately be the highest punishment offered under 1591, the mandatory minimum that Mr. Ray was convicted under. This is important because the statute itself says that these means will be used to cause a person to engage in commercial sex acts. The penalty only applies if those means effected the offense. Counsel, with respect, are you making the guidelines argument in terms of the length of the punishment? Is that what you're focusing on or not? No, I'm sorry, Your Honor. I should back up. I'm talking about the sufficiency claim with respect to the Why isn't there sufficient evidence of force, Counsel? And the reason why that, sorry for lengthy preface, is to understand Not at all, but I think we get the sufficiency of the evidence on your first prong. You've got an Eighth Amendment prong, but on the first argument, why is there insufficient evidence of force? Because there was no evidence that force, threats of force, or coercion were used to cause Kaylin to engage in involuntary sex. Well, what about her testimony? He's 6'5", right? For starters, isn't he a very large man? I think that's a fair reading of the record. And she was 16. And doesn't she testify about being picked up by her neck? She does, Your Honor. She testifies about being hit and needing to get medical care and lying by her age to get treated in the ER. And at that point in the transcript, she says something about, you know, why did this happen? And she says something about, and to be sure, I'm paraphrasing. She refused to iron his clothing. And then she says or expressed that she didn't want to engage in prostitution that day. Why isn't that sufficient? And I would like to get more specific about what the question was and what the answer was to make that argument. Well, on my scorecard, that's the argument you've got to make. And so at ER 368, I believe, we're talking about the question that was asked, what other reasons would Pumpkin hit you? The answer, main thing was just being lazy and not having things done his way. The follow-up question, because clearly that didn't give the prosecutor the answer she wanted, she leads with, when you say being lazy, does that mean you didn't want to go to work as a prostitute? And after even all of that leading, it was unobjected to, it should have been. It's leading and it's unobjected to. The most that she got was, quote, that or not wanting to iron his clothes. And where we have a sufficiency standard that requires us to look at the evidence and like most favorable to the government and determine whether any rational juror could find beyond a reasonable doubt that the elements are satisfied, that doesn't do it. Why is that, counsel? Perhaps the most classic explanation of reasonable doubt is when there are two inferences that can be drawn. One that would lead to innocence and the other that would lead to guilt. Well, if you isolate that one instance between the ironing and the prostitution, but my colleague has referred to some of the other allegations that were made, the way he treated her, lifting her up, the neck and so on and so on, his size, his age, all these things put together, I'm struggling to see why the jury could not have found that that constituted force, threats of force or coercion, certainly coercion. And those three things are demonstrated by that evidence, but not the critical crux, which is used to coerce her, used to threaten her, used to force her to engage in voluntary sex. The one question – Didn't she testify that when she wanted to leave, he would hit or choke her? And that's another summarization of how the government characterized what I believe is ER 365 through 66. Question at any time, did you want to leave Pumpkin? Yes. Can you tell us about that first time that you wanted to leave? He told me at first, yeah, you could go. But then I wanted to go and he wouldn't let me leave. So then the questions become much less specific. They go into the general. She starts talking in the third person. What would he say or do? He put his hands on us. What do you mean he put his hands on you, just hit you? When was, answer, choke you. He would hit you. He would choke you, like him, you up. The government has reduced that to saying that she was not allowed to leave, and therefore she was coerced into involuntary sex. But, counsel, with respect, when you take the word coercion, for example, if I understood it correctly, he said you can't talk to other black men. He didn't even want her to talk to his brother. And as I recall, he hit her because she had spoken to his brother. So when you take the totality of what my colleagues and I have referred to here, isn't that more than enough for a jury to determine that there was force, threats of force, or coercion under the terms of the statute? But not those things used to cause her to engage in involuntary sex in the government. But with respect, counsel, you yourself, I thought, agreed that one of the things with respect to the ironing, that ironing or that she didn't want to go out and perform sex. So she said that. Now, if the jury believed that, that's a clear causal link, is it not? Well, let's look at how the government characterized this evidence. The prosecutor went back to Kaylin in a redirect to try to become more clear because she herself did not get the answer that she led with in her question. And she asked at ER 392, the time you talked about where Pumpkin choked you because you slept late, do you remember that? Yes. Do you know why he was upset that you were sleeping late? No. And when we get to the closing argument, the government itself, the one who should believe that this evidence proves beyond a reasonable doubt that these things forced her to engage in involuntary sex, we have ER 307, the government rebuttal, where the prosecutor says, quote, he also hit or used force towards Kaylin when she was lazy, when she slept in, and importantly, quote, perhaps he wanted her to get up so she would get up and work. Perhaps. That is not proof beyond a reasonable doubt. That does not satisfy the Jackson Neville standard. That is not what a rational juror would accept as proof beyond a reasonable doubt. Forgive me, but your time is about half gone. What if we think it is, and we decide that there's a pretty glaring 404B problem here? And I think that it's important to move to that, because even if the court finds that there's sufficient evidence, it was thin evidence if we do have to go by not just Judge Smith's understanding of what's required in Todd 2, but the entire courts in that case, very thin evidence that he ever engaged in force, threats, or coercion to make her engage in commercial sex. So turn the page. You've got to turn the page and go to 404B if you would, please. So with the 404B, the government introduced over strenuous objection a 10-year-old pattern of conduct to try to prove what Mr. Ray was doing in 2014. Well, they did a lot of things. The arguments in closing and the sound bites are all through the briefing, and since you have limited time. In the motion on limine, they argued something else. They didn't argue MO. In the motion on limine, they argued knowledge, absence of mistake and whatnot. The court sort of gave an indicative ruling, didn't really rule on it. Then there was the testimony, and then there's the I think very concerning argument in closing. Right. Very concerning. And the prosecutor articulated the same words in closing at that, I believe, November 9th in limine hearing when she said he did it before, he engaged in this pattern, and so it's certainly foreseeable he would do it again. And even the court said that sounds like propensity to me. And it never changed. It never changed the way she argued it in closing, the way it was presented in trial. And what the government has now said on appeal is they've taken a complete different tack, that this is necessary to prove a 1591 conviction. Right. And they're looking at Todd too. Yes. Well, in their defense, Todd too has this analogy. Not in the concurring opinion. But in the main opinion, there's an analogy that I puzzle over. Right? The analogy about making lunches. That's where for me there's some very troubling language that I think interjects some confusion. It's very troubling. And when we take it in the context of the charge itself, I think we do have to look to Judge Smith's concurrence to understand that if there's going to be some notion of modus operandi, MO, that he did it, this time he's going to do it again, or to use the majority's analogy that if one clerk does it once, another clerk will use Westlaw again, even if they prefer Lexis and maybe switch to Lexis. There are problems with that. But even under the 404B analysis, we can cabin that to actions that occur during the offense. And I think that was what Judge Smith pointed to in his concurrence. Whatever the concerns are about what happens in the offense, we now have a 10-year-old conviction, or a conviction that concerns conduct 10 years old being brought into a trial, which eviscerates 404B, which if we take the government's argument and adopt it, would say that 404B doesn't apply to 1591 convictions. It's troubling, I mean, in a 403 prejudicial sense, that something that happened 10 years ago is being used to show what he will do here. Even the majority in Todd 2 said, and let me just get back to my quote, the knowledge requirement is such that if things go as he had planned, fraud, force, or coercion will be employed to cause his victim to engage in sex acts. To take something that happened 10 years ago and to add it into a trial where there's, at best, thin evidence to support the conviction, is deeply troubling. And it certainly prejudiced Mr. Wray in this case. Let me ask you this, counsel. Obviously, 404B and 403 are in there for a reason, and we're talking about an abuse of discretion standard, right? I understand clearly why you think 403B ought to be predominant here, but the reality is the charge from 10 years ago was virtually identical, virtually identical to what was alleged here. There certainly is case law that suggests that you can show an M.O. legitimately under 404, admittedly weighing it against potential prejudice. I agree you don't think the judge did it right, but when we look at this from our perspective, we have to look at this for purposes of using a standard of abuse of discretion. Why should we find that the judge abused his discretion here? Because even relying on this Court's case law that I don't disagree with, I believe I cited the case Hearst. When M.O. is used, this Court has determined it to be a very narrow exception to 404B. But identity wasn't at issue in this case, right? And that's my concern in this case, is that M.O., if we take it out of those confines. Well, that's why the government really isn't arguing M.O. on appeal. They get that. And they didn't argue it in the motion to eliminate either, because this would be a blatant violation. There's no identity issue here. It's not a signature crime that we need to use to indicate identity. But they've got some other reasons, knowledge, absence of mistake, and whatnot. Well, they did lock into M.O. using language from Todd, too, to try to argue that that's why this is otherwise admissible evidence. Well, the concern, I think, on appeal is, even with the benefit of reflection, and we've all said things on record that we wish we'd said differently for sure, but on reflection, the government on appeal is hearkening back to the majority opinion in Todd, too, and indicating confusion or at least taking the position that now they think they need to show this. And that's the collision course, it seems to me, with 404B. Well, I'd like to hear the government argue, and I'm sure it will articulate it well, whatever it is they think that under 404B's other exceptions would apply here. Right. But Judge Smith has invited you to talk about 403. Okay. So you still have the problem of this conduct being how did this really unfairly prejudice your client, given his ---- Do you want to save any of your time? You're way down. I do. It's up to you. I do. Why don't you save that, and when you come back you can reflect more on what the government has to say on this issue. Is that okay? Thank you. All right. Let's hear it from the government. And why don't you start off, if you will, with that 403, 404 issue. Absolutely, Your Honors. Good morning. Mark Ray for the United States. I disagree that there is a serious 404B issue here, Your Honor. In this case, this evidence, 404B, first of all, my opponent talks about this being 10 years old. Yes, it was that old. Are you talking about 403? You just said 404B. You think there's not a 404B problem or not a 403 problem? Well, I think neither, Your Honor. Well, let's start with 404B, if you would. Absolutely. In this case, the evidence showed that in 2007 in the Central District of California, the defendant pled guilty to two counts of sex trafficking, and the evidence that was stipulated was virtually identical to the evidence used here. Right, right, right. And that's why the judge said, gee, this looks a whole lot like propensity to me. And then after hearing an argument at the end, the judge said a few pages later, this is relevant and admitted it. On what basis, counsel? It's prior bad acts. It's virtually identical conduct. Let me give you that for purposes of just to speed up your argument. Absolutely. And you can't use it to show that he did the same thing again in the future on this occasion. And listen to this closing argument. Quote, and he used coercion and force and threats of force previously. This is the defendant's M.O. Again, it's not M.O. There's no identity at issue in this case. This is what he does to the jury. This is what he does. He's a pimp and he uses force. So I submit to you that the government has proven beyond a reasonable doubt that use of force, threats of force and coercion were used to have Galen engage in commercial sex. They're arguing directly that since he did it before, and he did it before, he pled guilty before. Right. Since he did it before, we have proven to you that he did it this time. Why is this not a very concerning 404B problem? Well, first of all, Your Honor, I disagree with the idea that modus operandi. I know my opponent has said that. You seem to assume it. Modus operandi is not limited to just identity. That's what I'm inviting you to argue. And that's what I'm arguing. Because in United States v. Todd, modus operandi, when you look it up on the Internet, it's a way of doing things. Are you relying? Okay, that's my question. Are you relying? I think there's serious confusion because of the majority opinion and it's about making lunches. It's the analogy about making lunches. Are you relying on Todd, too, or do you have something else for me? Well, I have something else, the plain language of 404B. Let's set aside modus operandi. In the end, it's really not so much what I say, what the lawyer said below. It's knowledge and exception. Knowledge, plan, intent. Right. So the problem I've got is usually there's so many exceptions to 404B, it all comes in. And usually we don't have a prosecutor making this kind of blatant argument here that really goes to the heart of 404B, but instead argues knowledge, intent, something. But the government's position here shifted a lot between the motion in limine, the way it was used in trial, the way it's used in closing, and then most dramatically, the argument you're making on appeals. So what is the government's position? Knowledge, intent, plan, Your Honor. It wasn't just the quote that you read. In Excerpt of Record 261, Ray used coercion and force and threats of force previously. This is the defendant's MO. MO is in the plain text of 404B. And so shall we allow the government to use 404, this argument that I just, at ER 261, that this should be a permissible argument? If it goes to most often, at least. Ladies and gentlemen, he's done it before, so we know, so we've proven that he did it this time. That's what the government argued. But that's not all that the government said, and that's not even conveyed on you. And to my point. Yeah. Should we allow this here? Should we not be concerned that it's awfully difficult to unring this bell? That one sentence, if you want to have concern. It's not one sentence, counsel. Please, please. Absolutely. In Excerpt of Record 314, take a look at that plea agreement. The defendant knew exactly that is how he behaved. Knowledge is in 404B. That was his intent. That word's in 404B. You can't take that word out of it, Your Honor, just because. Counsel, counsel. I'm going to, and I only do this very rarely, but I am going to remind you about Rule 11. This is not one sentence. I, Excerpt, or page 51 of the government's brief, I say it's tethered to a permissible rule 404B purpose. And I emphasize, she uses the word new. She uses the word knowledge. She uses the word intent. She uses the word MO. Unless I'm wrong, all four of those words are in 404B. Did you not hear what I just read about ER 261? I'm asking you to. I did hear what you read, Your Honor. Excuse me? I did hear what you read. You know, this was a record where the district court gave three separate limiting instructions. You had a very strong case. I don't have any problem with that. What I'm suggesting is that I'm not sure you're candidly representing the record, and that's concerning. And I won't say any more about it. Well, I apologize for that, Your Honor. But, you know, even if you think we had a strong case, I do too. But guess what? Our chief witnesses are prostitutes. In this kind of a case to talk about 403, you ask about the probative value of this evidence. Defense counsel, and it was a different Mr. Johnson below, went hard at these witnesses. Oh, they're prostitutes. They're getting benefits from the government. You have to look at their evidence with extra caution. I would submit to you that in a case like this or a Manhattan case, the probative value of the defendant's own admission is extremely high. Your argument in the brief is that after Todd to the government is required to introduce this evidence of his prior conduct. Is that the government's position? That's how I read, Todd. And maybe I said it too far. But what I say doesn't change the law. Well, the fact of the matter is when I'm looking. I'm trying to get a constructive conversation about whether we have an opinion that has created some confusion and whether there really is an opportunity here for us to be helpful by providing guidance. Because I think the district court judge was certainly giving it every sincere best shot as well. Yes. I don't think Todd gives confusion. Okay. It uses the phrase pattern of conduct, modus operandi, multiple times. It says what the statute requires is proof that this defendant had a pattern of living off the proceeds of prostitutes. Todd had multiple victims. Every 1591 case I have litigated before this Court has multiple victims. And so just if you could reconcile that for me with the notion that it's still America and we don't convince people this time because of the conduct last time. Correct. And no one has to. You've got to have a reasonable exception to 404. No one has to. Which one are you relying on? I'm relying on Todd itself and the fact that this evidence is no different. I'm relying on the fact that Judge Benitez, not one, not two, three instructions limiting contemporaneous with the introduction of the evidence right before closing argument and then remarkably during the closing argument of the prosecutor. And this Court has myriad cases that say we presume juries follow their instructions. Here, every effort was taken to make sure that those instructions were there. And it's interesting. When you look at the rule 30 conference, the defense counsel below didn't even request those limiting instructions. It was the government that made sure that Judge Benitez did that. And that's an excerpt of record 457 to 58. Yes. And our prosecutor, again, we have victims that are susceptible to credibility challenges left and right. So could you go back to 261 and then I'm going to quit beating this drum. But I just would like to hear the government's response about whether this was a permissible argument, quote, and he used coercion force and threats of force previously. This is the defendant's MO. This is what he does. He's a pimp. He used his force. So I submit to you the government has proven beyond a reasonable doubt basically that he did at this time. Is that permissible? I believe it is because she used the word MO. If she doesn't use the word MO, which is expressly in the language of 404B, she's following the rules. We didn't make this rule up. If that's what the rule says and she tethers that argument, I understand it. Maybe she should have bent over backwards to make it doubly clear. Maybe that one sentence wasn't that well crafted. But when you have a record with three separate jury instructions. Again, it's just not one sentence. But go ahead. Right. That's the only one that I will concede maybe should have been stronger. But when I look at the other ones, excerpt of record 314, the defendant knew exactly that is how he behaved. That is his MO. That was his intent. That was his knowledge in this case. That's four times, four words that rule 404B are alluded to. The prosecutor below never said, ladies and gentlemen, he did it before. The case is over. I submit. Well, he kind of did. On page 261, she just about did. Well, I can tell that's how you're viewing it. I would say, especially on this record, I mean, I don't know what more I can say. Thank you for answering the question. But I appreciate that. But. Did you try the case? I did not. Yeah. But with 404B, again, abuse of discretion standard, when it's used to prove intent, which is one of the expressed purposes here, the law actually requires it to be similar. When one looks at the conduct with DL, the victim from the prior case specifically, actually both QB and DL, the defendant stipulated that he had oppressive rules for them to follow and that he fostered a pattern of coercion by leading these victims to believe they would be physically beaten if they violated the rules. And I believe with DL, the stipulated facts even said that when she spoke to another But I take strong issue with my opponent saying that there was only thin evidence of. You had a very strong case. Force and coercion, yes. And here even aside from the fact that Kaylin testifies when she tried to leave, he wouldn't let her. She got beaten. You know, and the other thing, too, I want to make a point about this comment about, well, did he beat you when you didn't want to be a prostitute? That or refusing to iron his clothes. I mean, if there's one thing, before I go back to San Diego today, this seems to be implicit in my opponent's argument the whole time as if being beaten for refusing to iron clothes is just no big deal. Under the definition of coercion, coercion is listed disjunctively in the statute. It has to mean something besides force. It refers to fostering an environment of fear where if you just upset this man in the slightest way by refusing to iron his clothes, you could be beaten. And Jasmine, the other victim, there's been no discussion of her, she testified to also being choked and lifted off the ground. One time she was late for the defendant to get to Orange County to prostitute a victim. He specifically said, you're messing with my money, and he attacked her. So under Todd, under the case, it's unpublished. I did have a point about that. That evidence is also very convincing. Was there evidence that Kaylin knew about that? I believe she testified that she saw the defendant. That episode? Not necessarily that episode, but that she witnessed the defendant hitting Jasmine on another occasion. Was there any evidence to show that Kaylin knew about his prior conviction? No. No, I believe they met, you know, two months after. The answer is no. Yes. Thank you. Counsel, let me ask you this. Putting aside the sufficiency of the evidence argument for a moment and focusing on the 404B and its relationship to 403 issue, let's assume for a moment that the district court misunderstood Todd 2, or the Todd 2 panel perhaps didn't say it as well as it should have, and even though Judge Pregerson was on the panel, and so was Judge Noonan. What happens here? Let's just say arguably that the prosecution said some things that were confusing, as it happens in almost every case. What standard, what burden does the defense have to meet at this point to overturn a mistaken ruling by the district court that allowed what is characterized as MO evidence, but is really propensity evidence? What standard does the defense have to meet to overturn this verdict? Well, in that case, if I understand Your Honor correctly, it would be non-constitutional error. I think they would have to show more likely than not that the error materially affected the verdict, from my understanding. And is there any evidence presented that you're aware of that that would be the case? I would argue if this court were to assume all of the evidence. I'm not saying any of this is true. I'm just arguing. Well, I would stand up and say that standard would not be met in this case, because notwithstanding the focus on the 404B, I point out in footnote 7 on page 51 of our answering brief, in 35 total pages of closing argument, there was only addressing of that other evidence a handful of times. You have Kalin's direct testimony. To me, it would be like a harmless error argument. I think there is. And I guess that's what I'm wrestling with. Certainly, Judge Christian has suggested that the government had a very strong case. So if you have a very strong case, and let's just say there was a questionable ruling about the application of MO evidence, unless the defense shows that the verdict would have been different, is there an ability on the defense's part to overturn the verdict? Not in my understanding. If that's the standard, then that can't be met. Okay. Unless the court has any further questions. Are there questions by my colleague? Nothing. Nothing. Thank you. All right. Thank you, counsel. So defense has a little time left. We're going to give you an extra minute here, counsel. So you have a minute and 41 seconds. So go with it. Thank you, Your Honor. I appreciate it. First, with respect to coercion, it is defined in the statute as a pattern intended to cause someone to engage in involuntary acts. And this is E2. And then E4, the term serious harm, circumstances to compel a reasonable person in the same background to perform or continue performing commercial sex activity in order to avoid incurring the harm. Before you get to any of that, you have to show the person was unwilling to engage in that activity. Counsel, I know you like this sufficiency of the argument point, but can I ask you the same question that I ask your opposing counsel? Let's assume for a moment that the district court probably should have barred the MO evidence. And if we found that was true, given the strength of the government's case overall, and I know you don't agree with that, but if we found it that way, do you believe that the defense has introduced sufficient evidence in the record that you've cited that it would show that the jury would have likely ruled in your client's favor? Yes, Your Honor. If the jury was following what is required by the statute, by its interpretation, by Yes, I do. All the evidence in the light most favorable to the government. He's 6'5". He's got all these house rules. Don't talk into people. You have to give me the money. I get to see your cell phones, right? And he's used force, physical force. How does that not satisfy the government's burden of proof here? No one is saying that that conduct is right or just or not criminal. But with respect to a statute, to a conviction that carries a 15-year mandatory minimum, we have to look at what the government has to prove. And it's not that he was a bad boss, that he did these things to facilitate, to make it easier to pimp these women. We have to show that he did these things to make her have sex unwillingly. And they just haven't done that on this record. Okay. Other questions by my colleague? No. Thank you. Thanks to both counsel for arguing in this interesting case. The case just argued is submitted, and the Court stands in recess for the day. All rise.
judges: Hawkins, M. Smith, Christen